SHIELDS & HICKERSON v. BOGLIOLO.

1. The 20th sec. of the act concerning "costs," (R. C. 1835, p. 130,) gives to courts of equity a discretion in awarding costs, except in cases where the bill is dismissed, and this court would not interfere with the exercise of this discretion, except, perhaps, in very palpable cases.

2. In the recision of contracts for the conveyance of land, where the vendee has been in possession, and the vendor has received the purchase money, the general rule is to consider the use of the money and the use of the land as equivalent. This rule, however, would not apply where the land was wild, and wholly unproductive.

## Hayden for Appellants.

1st. That upon the proofs in the cause the chancellor, upon the recision of the contract, ought to have given complainants interest upon the money paid, down to the time of pronouncing of the decree, from the time it was paid.

2d. That the decree should have given the costs of the proceedings at law and in chancery to complainants, and that the court erred in overruling the motion for a new hearing as prayed for. See 1 Dana's Rep. 421, Taylor v. Porter; same book, 478, Johnson v. Tool; same book, 594, Wickliffe v. Clay

## Miller for Appellee.

The only question presented for the consideration of this court, is whether the complainants, appellants here, should have recovered interest upon the four hundred dollars paid by them at the time of sale, and whether the court should have decreed the costs of the suit at law, and of this suit against complainants. The counsel for appellee will insist that the circuit court very properly overruled motion for new trial, and that there is no error in the decree.

## Opinion of the Court by Napton, Judge.

The appellants filed their bill in chancery, praying an injunction against two judgments at law, obtained against them in favor of the appellee. The complainants allege in

their bill, that the consideration of the notes upon which judgment had been obtained, was a tract of land containing two hundred arpens, lying in the county of Cooper, and sold to them by defendant for the sum of $1700, in the year 1836. That complainants paid $400 in cash, and executed two notes for $1000, payable in one and two years, and one note for $300, to be paid when satisfactory evidence was presented to complainants or their counsel, that he, Bogliolo, had a good legal title. The defendant, on his part, covenanted that he had full power to convey, and would make a good title upon payment of the last instalment. The bill further sets forth, that Bogliolo had instituted suits upon the two notes of complainants and recovered judgment, and caused an execution to be issued; and charges that said defendant, at the time he sold said land to complainants, "well knew that he was not the owner thereof, and had no title thereto; that he had no legal right to sell the same, and that he was not seized of an indefeasible estate in fee simple, or any other estate whatever to the premises, and consequently, the representations of said Bogliolo were false and fraudulent." The bill further charges that Bogliolo had not, at the time of filing the bill, any legal title, nor had ever shown any evidences of title to complainants, though often requested to do so. The bill further charges, that Bogliolo is involved in debt, and in doubtful circumstances, in consequence of which they fear a loss of both the land and the money. The bill prays the chancellor to restrain the payment of the purchase money, but prays a specific performance, if defendant can show a good title: but if upon inspection of the title, it is found to be defective, prays a recision of the contract.

The defendant, in his answer, admits the contract of sale as set forth in the bill, denies all allegations of fraud, avers that he has a good and indefeasible estate in fee simple, and had one, at the time the contract was made. Defendant also denies that he is in failing or doubtful circumstances, on the contrary, that to secure Shields and Hickerson in the four hundred dollars paid, he had deposited with one William Gibson, a bond on two responsible men for $840.

Defendant further avers, that appellants had been in un-disturbed possession of the land ever since the making of the contract, and had cut and used considerable timber on the same. Exceptions to the answer were filed by the complainants, and a general replication, and the cause set for hearing at the next term; at which term, by consent of parties, the contract was rescinded and annulled, and the court decreed a recision, enjoined the judgments at law, ordered all bonds and agreements between the parties to be cancelled, and that complainants should deliver to defend-ant possession of the land. The court further decreed that defendant should refund the four hundred dollars paid with-out interest, and complainants should pay the costs of the suits at law and in equity. From the decree complainants appealed.

From the bill of exceptions, it appears, that complainants introduced witnesses to prove the land worth fifteen or twenty dollars per acre, if the title were good.

A witness for defendant proved, that the plaintiffs had given him permission to haul dead timber from the land, and that plaintiffs had hired a wagon and team from him, which they employed about a month in hauling saw logs from land lying in the direction of the land in controversy; and the witness knew of no other lands claimed by plaintiffs lying in that neighborhood.

The objections taken to the decree of the chancellor are, that the complainants were ordered to pay costs in the suits at law and equity, and were not allowed interest upon that portion of the purchase money which had been paid.

To ascertain the propriety of the decree for costs, it will be necessary to look at the facts presented by the record, at the rendition of the decree. The bill is framed with a dou-ble prayer: after charging that defendant had no title, it asks a specific performance, provided it should appear to the court, upon inspection of the title papers, that their surmi-ses, in that particular, should turn out to be false; but if, on the other hand, the defendant should produce no title, or one which might be esteemed defective, they ask a recision of the contract, and a return of the purchase money.

It may be observed here, that this bill was very objectionable. If the defendant had no title, it was useless to ask a specific performance, and such bills are properly dismissed with costs. A general charge of want of title is, besides, a very vague and indefinite one, upon which to ground an interference of the chancellor in restraining the collection of purchase money. (French v. Howard, 3 Bibb, 301.) But in addition to this, after charging that the defendant had no title whatsoever, it calls on the defendant to expose his title to the court, and if upon investigation it was not satisfactory, the bill demands a recision of the contract. Such bills as these, framed in the alternative, and grounded on vague and indefinite surmises, if tolerated by the courts, would be calculated to give great advantages to purchasers.

The answer denies every allegation in the bill, at least every one tending to impute any fraud or remissness of duty to the defendant. To this answer is filed a general replication, and no proofs whatever are offered. Upon this state of facts, it appears to me, without a compromise, the chancellor must have dismissed the bill.

Before the passage of our act regulating costs in chancery proceedings, the subject of costs was a matter which addressed itself to the sound discretion of the chancellor. (Coleman v. Moore, 3 Littel, 357.) The 20th section of our act concerning costs, appears to be still more explicit than the rule which prevailed previously to its passage. That section provides, that where the bill is dismissed, at the instance of either party, the complainant shall pay his costs; "and in all other cases in equity, it shall lie in the discretion of the court to award costs or not."

It might be very well doubted whether, under this provision of our statute, an appellate court would have any right to interfere with the exercise of this discretion. It is at least apparent, that a very palpable case must be made out to authorise such interference, and no such case is presented by this record.

In relation to the interest upon the purchase money, which the plaintiffs claim, the general rule appears to be well settled. The presumption in equity will be, that when the

The 20th s. of the act concerning "Costs," (R. C. 1835, p. 130,) gives to courts of equity a discretion in awarding costs, except in cases where the bill is dismissed, and this court would not interfere with the exercise of this discretion, except, perhaps, in very palpable cases.

In the recision of contracts for the conveyance of land, where

14

AUGUST TERM, 1841.

Shields & Hickerson v. Bogliolo.

*the vendee has been in possession, & the vendor has received the purchase money, the general rule is to consider the use of the money and the use of the land as equivalent. This rule, however, would not apply where the land was wild & wholly unproductive.*

purchaser has been put in possession, the use of the money and the use of the land are equivalent. Williams v. Rogers, 2 Dana R. 375; Taylor v. Porter, 1 Dana, 423; Coleman v. Moore, 3 Littel, 357. This rule may not in all cases be equitable; and I am not prepared to say, that a purchase of wild land, from which no benefit could arise, would be held such a presumption. In the present case, however, though the land was shown to be wild land, there was evidence that acts of ownership had been exercised over it by plaintiffs, and that by their permission wood had been carried off from it. There was also testimony from which the court might well have inferred, that the plaintiffs themselves had hauled saw logs from the land. The presumption then, which perhaps might arise in a case of land in a state of nature, that they were unproductive, is amply rebutted here, where the land was within two miles of the town of Boonville, where the plaintiffs resided, and was proved to be heavily timbered, and worth fifteen or twenty dollars an acre. There was, therefore, no error in the decree on this point.

Judgment affirmed.