TURNER v. JOHNSON, *Appellant.*

TURNER, *Appellant*, v. JOHNSON.

1. **Mortgage Sale**: AGREEMENT FOR REDEMPTION: STATUTE OF FRAUDS. An agreement of a second mortgagee to buy at a sale under the first mortgage and allow the mortgageor a reasonable time to redeem, by paying the amount bid, the second mortgage debt, and other adjusted accounts, is not within the statute of frauds.

2. ——— : ——— : LACHES. Where a mortgageor commences suit to redeem under such agreement within three years and three or four months after the sale, he will not be barred by the doctrine of *laches.*

3. **Mortgagee in Possession**: DEGREE OF CARE. A mortgagee of land in possession is held to an exercise of that care and diligence which a prudent person would exercise in respect of his own property.

4. ——— : RENTS. Such mortgagee will not be held accountable for more than the rents actually received unless he has been guilty of fraud or negligence.

5. ——— : COMPENSATION. Where the mortgagee in possession attends to the business of managing the land through agents, he should not be allowed compensation for his own trouble, but reasonable expenses paid to an agent to superintend the work, lease the land, and collect rents are proper matters of credit in favor of the mortgagee.

6. **Assignment of Judgment:** INTEREST. A judgment rendered in Kentucky against a principal and surety held to have been properly assigned to the surety, and, therefore, to bear the interest in favor of the surety called for by the judgment.

7. **Mortgagee in Possession:** SELLING PREMISES: MEASURE OF DAMAGES. Where a mortgagee of land in possession disposes of the premises, and the circumstances do not call for the exercise of any rigor, the measure of damages will be the value of the land at the date of sale.

8. **Supreme Court Practice:** MOTION FOR NEW TRIAL. The action of the court, in its modification of the referee's report as to allowance of interest and in the reduction of the amount of plaintiff's debt as found by the referee, must be assigned for error in the motion for new trial or it will not be considered on appeal.

9. **Second Mortgagee Purchasing:** FIRST MORTGAGE: INTEREST. One who purchases the mortgaged property to protect himself as second mortgagee, under an agreement to permit the mortgageor to redeem within a reasonable time, is entitled to the full benefit of the first mortgage, including interest on the debt at the rate therein specified.

10. **Equity Practice:** COSTS. Where the plaintiff is the prevailing party in a suit in equity, he should, as a general rule, recover costs.

11. ——: ——: WHERE FINDING IS FOR BOTH PARTIES. Where, however, substantial issues are found for one party and like issues found for the other, the taxation of costs will rest in the discretion of the court and will not be disturbed unless there has been a clear abuse of that discretion.

12. ——: ——: SUIT TO REDEEM. The general rule is, that the plaintiff and not the defendant must pay the costs in a suit to redeem from a mortgagee's possession, and this though he succeeds; and the rule held applicable in this case.

*Cross–Appeals from Livingston Circuit Court.*—HON. JAMES L. DAVIS, Judge.

AFFIRMED.

*B. R. Vineyard, H. L. Stone* and *Thomas F. Hargis* for Thomas Johnson, appellant and respondent.

(1) The plaintiff's petition is defective in improperly joining different grounds of action in the same

count. (2) The plaintiff, in his second amended petition, states that the sale did not take place at the court-house door, or at the door of a building used as such, and was, therefore, void. He further charged that the indebtedness secured by the deed of trust and all he owed the defendant had been paid off. If so, his only remedy was by action at law in ejectment for possession. The court will not exercise its equity powers in a legal action. *Maguire v. Tyler*, 47 Mo. 128; *Holden v. Vaughn*, 64 Mo. 588; *Sumner v. Rogers*, 90 Mo. 324. (3) An action at law and one in equity cannot be properly joined in the same count. And it is error to join in a single count of a petition, as did plaintiff in his second amended petition herein, an action to redeem land with one for the possession thereof. *Henderson v. Dickey*, 50 Mo. 161. (4) The changes and new matter set up in the second amended petition, as compared with the first amended petition, constituted a departure, and defendant's effort to have them stricken out on his motion filed for that purpose ought to have been sustained. (5) Where the court-house building has been destroyed, the door of the building used for the holding of court, or designated for that purpose, is the place at which trust sales should occur under deeds of trust providing for sales at the court-house door. *Kane v. McCown*, 55 Mo. 198; *Hambright v. Brockman*, 59 Mo. 52; *Napton v. Hurt*, 70 Mo. 497. And the testimony was overwhelming that the sale under consideration occurred at the door of such a building. (6) The Supreme Court of Missouri has decided, in a case much like the one set up in the petition of plaintiff, that no cause of action was stated. *Miltenberger v. Morrison*, 39 Mo. 71. (7) "A mortgage is not within the rule forbidding trustees or agents from purchasing estates with whose disposition they have been entrusted." *Woodlee v. Burch*, 43 Mo. 234;

Vol. 95—28

*Cooley v. Rankin*, 11 Mo. 642; *McNair v. Biddle*, 8 Mo. 257; *Blythe v. Richards*, 10 S. & R. (Pa.) 261; *Harrison v. Roberts*, 6 Fla. 714. (8) "The insecurity of titles and the temptation to perjury, among the chief reasons demanding that contracts affecting lands should be made in writing, also imperatively require that trusts arising by operation of law should not be declared upon any doubtful evidence, or even upon a mere preponderance of evidence. There should be no room for a reasonable doubt as to the facts relied upon." *Johnson v. Quarles*, 46 Mo. 426; *Forester v. Scoville*, 51 Mo. 268; *Ringo v. Richardson*, 53 Mo. 395; *Worley v. Dryden*, 57 Mo. 233; *Rogers v. Rogers*, 87 Mo. 257. (9) Inadequacy of price, to justify the setting aside of a sale on that ground, should be so gross as to shock the moral sense and outrage the conscience. *Holden v. Vaughn*, 64 Mo. 588; *Meir v. Zelle*, 31 Mo. 331; *Hammond v. Scott*, 12 Mo. 8; *Railroad v. Brown*, 43 Mo. 297. And this rule applies to sales under powers in deeds of trust as well as to sales under execution. *Million v. McRee*, 9 Mo. App. 344; *Carter v. Abshire*, 48 Mo. 303; *Kline v. Vogel*, 11 Mo. App. 211. (10) Turner, if he ever had any rights, slept on them too long (three years and three months) before attempting to assert them, knowing all the time that defendant was in possession of the lands, claiming and paying taxes thereon, and expending large sums in improving the same. In one case (*Reel v. Ewing*, 71 Mo. 17), the Supreme Court decided two years was too long to wait. In another (*Kline v. Vogel*, 90 Mo. 239), a party was held to have lost his rights by waiting nearly three years. See also, *Bliss v. Pritchard*, 67 Mo. 181, and cases cited therein. Besides his laches, plaintiff is cut out of the right to recover on the principle of equitable estoppel. *Evans v. Snyder*, 64 Mo. 516; *Collins v. Rogers*, 63 Mo. 515; *Stevenson v. Saline County*, 65 Mo. 425; *McNew v. Booth*, 42 Mo. (11) If a time is fixed for redemption

in an agreement, which is made the basis of a trust, the effort to redeem must be made in that time; if no time is agreed on, then it must be made within a reasonable time. *Medscar v. Swaney*, 45 Mo. 273; *Hughes v. Sheaff*, 19 Iowa, 335; *Saxton v. Hitchcock*, 47 Barb. (N. Y.) 220; *Woodsworth v. Morris*, 56 Barb. 97; Jones on Mort. (3 Ed.) secs. 260, 261, 262. But the facts of this record show no contract or agreement mutually binding on the parties, but only a privilege granted by Johnson to Turner after the sale, and not enforceable after three years laches. *Price's Heirs v. Evans*, 26 Mo. 52, 53. (12) Where one party gives notice to the other party to a contract that he repudiates the agreement and refuses to comply with it, and the party so notified "lies by for one or two years, it will be regarded as an acquiescence in the rescission," and a court of equity will, in a suit brought after that for specific performance, deny to him the right to recover. *Banks v. Burnham*, 61 Mo. 76. (13) The alleged trust, if it existed, was created by contract and is within the statute of frauds and perjuries. R. S., secs. 2511, 2512, 2513; *Parker v. Boyle*, 4 Bibb, 102. This case, if a trust, is neither a resulting nor constructive trust, and, therefore, within the statute of frauds and perjuries. Perry on Trusts (3 Ed.) secs. 137, 226. (14) Defendant in this case, under the pleadings and order of reference, can only be held responsible for the rents collected and received. His possession was lawful and rightful, and although he may be adjudged to be a trustee, he can only be held liable for what he received, unless proven guilty of fraud or gross negligence. *Hunter v. Hunter*, 50 Mo. 452; *Ely v. Turpin*, 75 Mo. 86; 2 Jones on Mort., sec. 1123; *Harper's Appeal*, 64 Pa. St. 315; *Morris v. Budlong*, 78 N. Y. 543; *Philips v. Hulsizer*, 20 N. J. Eq. 315, 316. A mortgagee in possession under a deed absolute in form and believing himself the actual owner (as defendant undoubtedly

did in this case) is never chargeable with more than the net rents received. *Robinson v. Hanbury*, L. R. 2 H. L. 1 ; *Morris v. Budlong*, 78 N. Y. 543 ; *Moore v. Cable*, 1 Johns. Ch. 384 ; *Harper's Appeal*, 64 Pa. St. 315 ; *Greenwood's Appeal*, 92 Pa. St. 181. (15) Where the mortgagee in possession is a non-resident and appoints an agent to manage the lands mortgaged, in the absence of any negligence in appointing the agent, the mortgagee will only be charged with the rent actually received, although a higher rent by due diligence could have been obtained. *Gerrish v. Black*, 104 Mass. 405 ; 5 Wait on Act. and Def. 434. (16) The interest on the eleven thousand dollars should have been computed at the rate of ten per cent. per annum till paid. *Harper v. Ely*, 70 Ill. 501 ; *Mosier v. Norton*, 83 Ill.; *Starr v. Ellis*, 6 Johns. Ch. 395 ; *James v. Johnson*, 6 Johns. Ch. 425 ; *Valle v. Fleming*, 29 Mo. 152 ; *Honaker v. Strough*, 55 Mo. 472. (17) A trustee is required to exercise only common skill, common prudence, and common caution. *Hunter v. Hunter*, 50 Mo. 445 ; *Taylor v. Hite*, 61 Mo. 142. (18) Courts of equity have discretionary power in this state to tax costs to either party. R S. 1845, sec. 6, p. 242 ; R. S. 1879, secs. 18, 1002 ; *Shields v. Bogliolo*, 7 Mo. 134 ; *Walton v. Walton*, 17 Mo. 376 ; *Dupont v. McLaren*, 61 Mo. 511. Defendant is the "prevailing party" on the accounting branch of the case, and is entitled to his costs. (19) The testimony showed that the services of defendant in taking charge of and managing the lands in controversy, loss of time, and trouble, were reasonably worth at least five thousand dollars.

*Ramey & Brown*, *Woodson, Green & Burnes*, *D. H. McIntyre* and *C. C. Turner* for Thomas Turner, respondent and appellant.

(1) A parol agreement to buy in land for a debtor

Turner v. Johnson.

whose property is about to be sold, and a purchase by the party who agreed to buy it and furnish the means to pay for it and hold the property as security for the money furnished, any attempt by the purchaser to hold it for himself, is in itself a fraud, and courts of equity will not permit the purchaser to rely on the statute of frauds, but will treat him as a fraudulent trustee and permit the debtor to redeem on equitable terms. *Kennedy v. Keating*, 34 Mo. 25; *Tibbeau v. Tibbeau*, 22 Mo. 77; *Rose v. Hayden*, 35 Kas. 106; *Kendall v. Mann*, 93 Mass. 15; *Sanbross v. Jones*, 35 Cal. 481; *Connor v. Lewis*, 16 Maine, 268; *Suggen v. Heard*, 31 Miss. 426; Wash. on Real Prop. (4 Ed.) top page 486. (2) Such a purchase by one who has agreed to buy for the debtor and lulls him into security, and he thereby obtains the land at an under price, is a fraud that makes the purchaser a *mala-fide* trustee and he will not be permitted to hold the land, but the debtor may redeem. *O'Neil v. Capelle*, 62 Mo. 202; *Clarkson v. Greely*, 35 Mo. 95; *Lewis v. Lewis*, 11 Mo. 182; *Rose v. Bates*, 12 Mo. 30; *Griffith v. Judge*, 49 Mo. 536; *Hunter v. Hunter*, 50 Mo. 445; *Miller v. Antle*, 2 Bush, 407; *Crutcher v. Hord*, 4 Bush, 360; *Wood v. Rabe*, 96 N. Y. (3) Parol evidence is admissible to show that a deed absolute on its face is in fact only a mortgage or security for money; and if established the court will so treat it and permit redemption; and it matters not that the debtor, who held the equitable title, procured the holder of the legal title to make an absolute deed to a grantee, with such understanding between the grantee and equitable owner. *O'Neil v. Capelle*, 62 Mo. 202; *Griffith v. Judge*, 49 Mo. 536; *Workman v. Greening*, 115 Ill. 477; *Livingston v. Ives*, 35 Minn. 55; *Miller v. Stokely*, 5 Ohio [O. S.] 194; 3 Wait, 144, 412; 100 Mass. 270. (4) Even if it was conceded that a parol agreement such as named above is within the statute of frauds, still it may be proven by any writing or letter signed by the purchaser

addressed and delivered either to the debtor or a third person. *Cornelius v. Smith*, 55 Mo. 528 ; *Gunneucher v. Reel*, 61 Mo. 592; *Aynesworth v. Haldeman*, 2 Duvall, 568. A verbal contract to purchase and hold lands for a debtor is not within the statute of frauds. *Green v. Ball*, 4 Bush, 586 ; *Martin v. Martin*, 16 B. Mon. 8; *Farrow v. Patton*, 20 Mo. 81; *Dickerson v. Crisman*, 28 Mo. 134 ; *Glass v. Hurlburt*, 102 Mass. 24 ; *Potter v. Jacobs*, 117 Mass. 132 ; *Temple v. Johnson*, 71 Ill. 13. (5) Equity will not permit a party to obtain an unconscionable advantage of another whom he has assumed to serve even if his services were gratuitous. *Dillon v. Anderson*, 43 N. Y. 232 ; *Ross v. Houston*, 25 Miss. 591 ; 11 Wall. 256 ; *Chastain v. Smith*, 30 Ga. 96–7. (6) The statute of frauds was enacted for the benefit of land-owners, and it is only necessary that the party who at the beginning of a treaty between him and another held the legal or equitable title to land should execute a writing or procure the party who held the legal title for his benefit to do so or convey it to his contractee ; and such holder of the legal or equitable title can enforce the trusts, considerations, and agreements of the grantee although he signed no writing. *Bean v. Valle*, 2 Mo. 126 ; *Farrow v. Patton*, 20 Mo. 81 ; *Halsa v. Halsa*, 8 Mo. 303 ; *Ivory v. Murphy*, 36 Mo. 534; *Magowan v. West*, 7 Mo. 569. (7) It has been decided in this and all other states and in England where there was a contract about the sale of land in writing, and it is lost, that parol proof of its existence and its contents is admissible and takes the case out of the statute of frauds, and satisfies its requirements. *Kidd v. Guntler*, 63 Mo. 342 ; *Shaw v. Pershing*, 57 Mo. 416 ; *Henderson v. Henderson*, 55 Mo. 534, 546. Redemption is favored in equity. 5 Wait, 420 ; 1 Wait, 208 ; *Jackson v. Moore*, 6 Cowan, 706 ; *Steere v. Steere*, 5 Johns. Ch. 1. (8) The deed of trust under which the sale was made

required it to be at the court-house door. The court-house having been burned, it should have been made at the door of the house in which the court was then held. But it was in fact made in front of the Maysville Bank and not in front of the house where court was then held. In this state of case the purchaser holds as a trustee for the debtor. The evidence is somewhat conflicting on this point, but the great preponderance is that the sale was made at the Maysville Bank. (9) Johnson by his acts and declarations at and before the sale kept others from bidding and purchased the land at a sacrifice, and holds as a trustee for Turner. *Bedford v. Moore*, 51 Mo. 448. (10) The trustee and the beneficiary in the deed of trust and the purchaser made a fraudulent arrangement to sacrifice the debtor's land at the sale; the purchaser thereby became a trustee and held it for the debtor subject to redemption. *Sherwood v. Saxton*, 63 Mo. 78; *Graham v. King*, 50 Mo. 22; *Tatum v. Hollispie*, 59 Mo. 422; *Stofel v. Shraeder*, 62 Mo. 147. (11) Johnson certainly from the evidence and his letter of April 21, 1879, in answer to Turner's of a few days before, in which he had spoken of Turner's right to redeem, had reason to believe that Turner was expecting him to buy in the land for him; and availed himself fraudulently of this fact to obtain Turner's consent that if he bought it the possession of the land should be immediately turned over to him by telegraphing Turner these words: "Can't buy till Dawson (Turner's agent) directed to turn over possession. Answer." This fraud alone constitutes Johnson a *mala-fide* trustee and entitles Turner to redeem. (12) Defendant has been guilty of wilful misstatements on oath and has shown such a defective memory that his evidence should be entirely disregarded. 62 Mo. 70; 66 Mo. 588. (13) The judgment establishing the trust and right of redemption is right on the whole case and should be affirmed. R. S., secs. 3569, 3775; *Conley v. Doyle*, 50 Mo. 234; *Dunn v.*

*Baley*, 58 Mo. 134; *Wilkerson v. Allen*, 67 Mo. 502; *Jackson v. Magruder*, 51 Mo. 55; *Hambright v. Brockman*, 59 Mo. 52. (14) "Upon the affirmance of any judgment or decision, or upon the dismissal of any case, the Supreme Court may award to the appellee or defendant in error such damages, not exceeding ten per cent., on the amount of the judgment complained of as may be just." R. S., p. 643. (15) No tender was necessary in this case. If it had been, Johnson, by refusing to settle and recognize the trust, made it impossible to know what to tender, and by denying Turner's right and claiming the land, dispensed with it; and by refusing to give Turner a writing in lieu of the lost letter, showing his right, he put it out of his power to raise the money. *Griffith v. Judge*, 49 Mo. 536; *Rose v. Bates*, 12 Mo. 30; *Deichman v. Deichman*, 49 Mo. 107; *Ulrica v. Papin*, 11 Mo. 42; *Brock v. Heady*, 13 Ohio St. 306; *Gould v. Bank*, 86 N. Y. 75; *Stapp v. Phelps*, 7 Dana, 301. (16) Even if there was an agreement that it was to be redeemed in twelve months, as that agreement was made before the sale it operates as a mortgage and "once a mortgage always a mortgage;" and it makes no difference that it was not done within that time. Besides this Johnson put it out of Turner's power to raise the money and pay him within the twelve months by failing to come to a settlement even when the time was appointed, and by refusing to give him a writing showing his right and thus enable him to raise the money. Turner actually told him within the twelve months that some friends had promised him the money, if he had written evidence of his right. *Tibbeau v. Tibbeau*, 22 Mo. 77. (17) The trial court erred in making Turner pay the costs. R. S., sec. 990; *Hawkins v. Noland*, 53 Mo. 328; *Spencer v. Spencer*, 11 Paige, 159; Adams' Eq. 836; Perry on Trusts, 427, 487; *Gage v. Bailey*, 3 West. Rep. 34; *Temple v. Lawson*, 19 Ark. 148. (18) The trial court committed many errors

against the plaintiff on the accounting branch of the case.

BLACK, J.—The plaintiff, Thomas Turner, on the twenty-fifth of July, 1875, executed a deed of trust on twenty-eight hundred and fifteen acres of land in DeKalb county, this state, to secure the payment of his note of that date for fifteen thousand dollars, due in five years with semi-annual interest, payable to the Life Association of America. The defendant Johnson, as the surety of Turner, paid a debt to the Northern Bank of Kentucky. He was also bound in a like capacity for the payment of another debt of Turner to the Farmers' National Bank of Mount Sterling, Kentucky. Both of these debts had been reduced to judgment against Turner and Johnson. The latter had paid another debt for A. G. Peters, for which Turner was bound as a co-surety, but had paid no part of his share, and hence was bound to make contributions to Johnson. To secure these several debts, amounting to seven or eight thousand dollars, Turner made a mortgage to Johnson on the Missouri lands, previously mortgaged to the Life Association. The mortgage to Johnson bears date the sixteenth of September, 1876. Certain lands in Iowa were included in this deed of trust, and in the mortgage. The Missouri lands were sold under the deed of trust on the twenty-third of April, 1879, and Johnson became the purchaser at the sum of eleven thousand dollars.

On the twentieth of July, 1882, plaintiff commenced this suit in the DeKalb circuit court to redeem from the mortgage and sale under the deed of trust. Relief is asked mainly on the ground that Johnson purchased the property at the trustee's sale under an agreement with plaintiff that he should have the right to redeem within a reasonable time by paying the amount bid and all other indebtedness of Turner to Johnson. There

were unsettled accounts between the parties, besides those mentioned in the mortgage. The venue of the cause was changed to the Livingston circuit court. That court made a decree allowing the plaintiff to redeem, and sent the cause to a referee to hear the evidence and state the accounts between the parties. The report of the referee, as modified by the court, shows an indebtedness of Turner to Johnson of about eighteen thousand dollars. Both parties have appealed to this court; and the first question on the defendant's appeal is as to the right of the plaintiff to redeem the land.

The record is voluminous, beyond precedent, but the following statement of the evidence will present the question now to be determined: Turner and Johnson resided at Mt. Sterling, in the state of Kentucky, and for many years had been on friendly terms. Turner as an attorney-at-law had represented Johnson in many matters. Turner had paid some three or four thousand dollars on the principal of the debt to the Life Association, located at St. Louis, but in the latter part of the year 1878, having made default in the payment of the interest, the Association threatened to sell the land under the powers contained in the deed of trust. He felt his inability to pay that debt at its maturity in 1880. He applied to various persons, and among others to Johnson for assistance. He testifies to several conversations in November and December, 1878, and in which he says Johnson agreed either to buy the debt of the Life Association, or bid in the land at the trustee's sale, and hold it as security for the amount bid and for the mortgage and other debts owing to Johnson. That conversations were had on this subject at that time is conceded; but Johnson, states emphatically that he made no such agreement. Turner was then a member of Congress from Kentucky, and left for Washington the last of December, 1878. About this time Johnson went to Georgia, but left the matter with his attorney,

Judge Peters, who entered into correspondence with the Life Association. A letter from Peters to the Association, dated in January, 1879, stated the fact that Johnson held a second mortgage, and made inquiry if they would allow Johnson to arrange the matter by paying one-half of the debt down and the other half in twelve months. Further correspondence led to a postponement of the proposed sale until the twenty-third of April, 1879, in order to give Johnson an opportunity to come to this state and examine the land. During this correspondence, Turner wrote the Association that Johnson would buy in the land and allow him to redeem. It does not appear that Johnson ever saw this letter.

On the twenty-fifth of January, 1879, Johnson directed Peters to go ahead and fix a time for a conference with the Association; and after speaking of the necessity of making some money arrangements, evidently in respect to this matter, he says in that letter: "I am glad the parties to the mortgage refused to make any arrangement and give time to Turner. I prefer it should be made to suit me. In our conference if I am satisfied the land has value enough to pay me after paying off the mortgage, I will prefer they go and sell *bona fiedly*, and I attend the sale and bid the amount of the debt, take legal title in that sale. If Turner pays me in a reasonable time the whole amount I paid for land and as his security, let him do so and redeem it. I think this the better plan. What do you think of it?" After this and on the twelfth of February, Johnson, in a letter to Turner, says he had been in communication with the Association; that the debt amounted to twelve thousand five hundred and eighty-two dollars, and he goes on to say: "I will, however, if able when I return home and it is not too late for the sale, go and see it (the land). It is too big a thing to go into blind." To this Turner replied by urging Johnson to have the

sale postponed, saying: "I fear this is the only means by which I can make you whole."

Johnson reached St. Louis on or before the sixteenth of April, and on that day he telegraphed Turner: "Please instruct by telegraph, at my expense, Henry W. Hough, trustee, to sell the DeKalb county lands in one parcel, without subdivision. This will be for your interest and mine, and the Life Association consents." To this Turner answered by telegram: "Sell DeKalb land in a body without subdivision." Johnson says he did not send this telegram, but only gave his consent to the Association to say to Turner that he, as second mortgagee, was willing for the land to be sold in a body; but the evidence is quite clear that he not only knew how the telegram was worded, but that it was sent in his name and with his approval and that he saw the answer.

Johnson then went to DeKalb county, saw the land, and then telegraphed Turner that he could not buy the land until Dawson, a tenant in possession, was directed to turn over possession. Turner at once complied with the request by giving Dawson suitable directions to that end. On the same day, the twenty-first of April, Johnson wrote Turner that he had not yet agreed to buy. This statement clearly means that he had not yet come to an agreement with the Association; but he did, before the day of sale, indicate to the Association that he would bid eleven thousand dollars and no more, and it is equally clear the Association had agreed to let the land go at that price. In this letter of the twenty-first of April, Johnson among other things says: "I got your answer as I was leaving home for this state. Certainly I would let you redeem the lands if I buy, in any reasonable time, say twelve months, and would no doubt be glad to do it by your paying what I pay, and also paying me all you owe me, cost and expenses, etc., which I understand as your request, and I repeat I would

gladly do it. All I want is my money back, and ten per cent. interest. I can't bind myself in law to do this any day to come, as that would cut me out of the right of making sale, and I don't want to hold any lands in this state. I will be liberal with you, and hope you will soon make a rise, and come prepared to buy back the land if I should buy it, and I confess I am at a great loss what to do. If I buy with my claims it will cost me twenty-two or twenty-three thousand dollars, or more. *I telegraph you to-day from here.* Will post you after the sale." This letter was not and could not have been received by Turner, until after the twenty-third of that month, the day of sale.

There is much conflict in the evidence as to what transpired on the day of sale. We are, satisfied, however, there was no offer to sell the land in parcels. It is also clear that a number of persons desired to bid on parcels and would have paid a much higher price than that bid therefor, per acre, by Johnson, had it been sold in subdivisions. There is evidence to the effect that Johnson gave out word that he bid in the interest of Turner. Johnson says he made no such statement, but says he made a public statement at the sale that he bid for himself alone, and that he would bid no more than eleven thousand dollars, and in this he is corroborated by several witnesses who were at the sale.

1. The evidence in this case leads to the conclusion that Johnson had no confidence in Turner's ability to pay the debts, and his former experience furnished a sufficient basis upon which to rest that conviction. He evidently designed to buy in the land mainly for his own protection, and to do it in such a way as to be under no legal obligations to Turner on account of the purchase, leaving any favors which he might extend to Turner as a matter of grace. But we are satisfied a different effect must be given to these transactions, and for these reasons: Turner expected Johnson to either take up the

note held by the Life Association, or buy in the lands and hold them as a security for the amount bid and for other debts due Johnson. Johnson's correspondence with the Life Association shows that he first contemplated a purchase of the note, then of the land. He had not determined which, if either, he would do before he came to St. Louis, but he had expressed a willingness to Judge Peters to allow Turner a reasonable time to redeem, in the event he bought the land. This was what Turner desired, and that desire must have been known to Johnson, for it had been the object of Turner's solicitations from first to last. No terms of redemption had been spoken of in the letters, save that of a reasonable time, and we are satisfied these were the only terms spoken of in the conversations. Now when Johnson came to St. Louis and asked Turner to allow the lands to be sold in a body, and, before the sale, said he could not buy unless the tenant was directed to turn over possession, Turner had a right to conclude, and, indeed, could come to no other conclusion than this, that Johnson intended to buy the land and allow him the right to redeem, and that, too, within a reasonable time. If Johnson intended any other arrangement he could have indicated it to Turner by telegram, and under the circumstances it devolved upon him to do so. He must stand on the state of facts known to both parties, and the understanding so clearly to be deduced from them. His uncommunicated intentions can be of no avail. The sale of the land in a lump excluded the other persons desiring to bid from the list of competitors, and for all practical purposes left the matter to defendant's proposed bid of eleven thousand dollars.

The sale of such a body of lands, constituting at least three farms, in a lump would of itself be sufficient reason for setting aside the sale on a timely application, but for Turner's consent to a sale in that way. This consent and the possession having been obtained upon the

understanding on the part of Turner before indicated, it would be a gross injustice to measure his rights by any other agreement. The agreement then is that of a second mortgagee to buy at the sale under the first mortgage, and allow the mortgageor a reasonable time to redeem by paying the amount bid, the second mortgage debt, and other adjusted accounts. The fact that this agreement rests in parol is of no avail to the defendant. The statute of frauds cannot be invoked by one who purchases with such an agreement, and this for the further reason that the statute was never designed to aid a party in the perpetration of a fraud, but was intended to prevent frauds. *Rose v. Bates*, 12 Mo. 30 ; *Damschroeder v. Thias*, 51 Mo. 100 ; *Gillespie v. Stone*, 70 Mo. 506 ; *O'Fallon v. Clopton*, 89 Mo. 287 ; *McNew v. Booth*, 42 Mo. 190. This view of the case renders it unnecessary to say more of the letter of the twenty-first of April. Nor need we consider the conflicting evidence in respect of two other letters from defendant to plaintiff, one written from Missouri after and on the day of sale, which plaintiff says he did not receive, and the other in a month or so thereafter, said by plaintiff to have been lost, and which defendant says he did not write. Whether the defendant wrote these two letters or either of them is not important. We let the judgment stand on what we conceive to be reliable evidence of matters as they stood when the sale took place. Our conclusion is, that defendant is substantially a mortgagee in possession, and there was no error in allowing the plaintiff to redeem.

2. Ineffectual efforts were made in November, 1879, and in the year 1880 to come to a settlement of the unadjusted accounts existing between the parties, each accusing the other of being in fault and the cause of the failure to settle. These accounts were complicated, as shown by the mass of evidence taken in respect of them. The improvements placed on the land by Johnson were

of such a character only as good husbandry called for, and for which expenditures he has been compensated. This suit was commenced within three years and three or four months after the date of the trustee's sale ; and we cannot see that the question of *laches*, made by defendant, has any proper application to the case. On the accounting branch of the case, defendant filed seven exceptions to the report of the referee, three of which were sustained. Plaintiff filed thirty, one being sustained in part. The other exceptions were overruled. To many of these rulings errors are assigned by one side or the other ; and what is hereafter said will be in response to the questions thus raised.

3. A mortgagee in possession is held to an exercise of that care and diligence which a prudent person would exercise in respect of his own property. He will not be held accountable for more than the rents actually received, unless he has been guilty of fraud or negligence. *Ely v. Turpin*, 75 Mo. 286 ; 2 Jones on Mort., sec. 1123. He is not entitled to compensation for his own trouble in taking care of the mortgaged property, the reason of this rule being, that to allow such compensation would tend to facilitate usury and oppression, and besides this the mortgagee acts in his own interest and for his own benefit. 2 Jones on Mort., sec. 1132. There is a tendency toward a modification of this rule as to trustees and possibly even mortgagees in possession ; but where, as here, the mortgagee attends to the business through agents, we think he should not be allowed compensation for his own trouble. Here was a large body of land, three farms, and the defendant built a number of miles of fence. Reasonable expenses paid to an agent to superintend the work, lease the land, and collect rents are proper matters of credit. A prudent owner acting for himself might well incur like expenses. The evidence of the value of the rent is conflicting ; some of the estimates have all the appearances of being

extravagantly high, but the evidence, as a whole, shows that defendant managed the property with full ordinary care. His management of the lands, it is safe to say, has been superior to that of the plaintiff before the sale, and there can be no pretense for a charge of fraud or negligence in the management of the property. He stands charged with the rents received, and in other respects the rulings of the court were in accord with the principles before stated.

4. One of the debts due from Turner to Johnson is described in the mortgage dated the sixteenth of September, 1876, as a judgment in favor of the Farmers' National Bank against Turner and Johnson, "and Johnson has agreed to pay it and take a transfer of the judgment." This judgment bore ten per cent. interest per annum. Johnson was the surety of Turner. The referee allowed six per cent. interest on $2,966.65, the amount paid by Johnson on December 20, 1876. The court modified the allowance so as to bear ten per cent. interest. By the statute laws of Kentucky, a surety who pays a judgment against the principal and himself has the right to an assignment thereof from the plaintiff or his attorney, and may sue out execution thereon. That Johnson would be entitled to ten per cent. is not denied, if the judgment was properly assigned. It was not assigned until December, 1882, or January, 1883. This statute (Stanton's Rev. Stat., chap. 97, p. 396) was construed by the court of appeals of Kentucky in *Veach v. Wickersham*, 11 Bush, 261, and in *Joyce v. Joyce*, 1 Bush, 474; and we do not understand the ruling to be that the assignment must be made at the time the debt is paid by the surety. Without such assignment or an express contract, the surety would stand on his implied contract for reimbursement; but we are of the opinion the assignment may be procured at any time before that implied contract ceases to be a subsisting

demand. No claim is made that it was not a subsisting debt at the date of the assignment. Besides this the mortgage provides for an assignment, doubtless with the view of giving Johnson all the benefits of the judgment creditor in respect of the debt. The debt, it is true, was paid directly to the bank, and the assignment was made in the name of the bank by Mr. Reid, who signed the firm name of Apperson & Reid, the attorneys who procured the judgment. Apperson died before the date of the assignment, but Mr. Reid had the power to make the assignment notwithstanding the death of his partner. The fact that Johnson paid the debt directly to the bank and not to the attorneys is immaterial. He paid the debt ; the law gave him the right to an assignment from the bank or its attorney, and it is wholly immaterial by which it was made. It was after all the act of the bank, done in compliance with the plain command of statute law. There was, therefore, no error in allowing ten per cent. interest on this demand.

5. The defendant stands charged with the price at which he sold two forty-acre tracts in 1880 and 1881. The evidence is satisfactory to the effect that the price at which they were sold was the then full value. It has been held, where the mortgagee disposes of the premises and the circumstances do not call for the exercise of any rigor, the measure of the damage' will be the value of the land at the date of sale. *Wilson v. Drumrite*, 24 Mo. 304. This was all the plaintiff claimed in his amended petition, but by the second amended petition he asked for the value of the land at the date of the trial. Our attention is called to the fact that this portion of the second amended petition was stricken out, and that an exception to the ruling is not preserved by the bill of exceptions. The demand for increased damages is, therefore, not properly before us.

6. We may here say the defendant in his briefs complains that he was not allowed ten per cent. interest

on the eleven thousand dollars, and that the court reduced the principal of the little debt from $5,908.70, as stated by the referee, to fifty-five hundred and nineteen dollars ; but as the defendant's motion for new trial makes no complaint of these rulings they are not considered here.

7. Another question is, what rate of interest should be allowed defendant on the amount he bid at the trustee's sale. The debt secured by the deed of trust bore eight and two-thirds per cent. before, and ten per cent. after maturity. The sale was made before the maturity of the principal debt. One who purchases or holds under a purchaser at an invalid sale under a mortgage given to secure school moneys will be subrogated to the rights of the mortgagee, 'the purchase money having been paid to the credit of the school fund. *Honaker v. Shough*, 55 Mo. 472 ; *Wilcoxson v. Osborn*, 77 Mo. 632. So where one purchases at a void administrator's sale, and the money is applied in discharge of a mortgage on the same land, he will be substituted to the rights of the mortgagee. *Valle v. Fleming*, 29 Mo. 152. Johnson by his purchase acquired the legal title, but subject to the right of plaintiff to redeem, and there can be no doubt that for all purposes of redemption he stands in the shoes of the Life Association to the extent of the amount bid, namely, eleven thousand dollars. His right to hold the property until the payment of the amount bid, and his liability to account for rents, carry the right to have the full benefit of the deed of trust, including interest on the debt at the rate therein specified. *Harper v. Ely*, 70 Ill. 581. Defendant is in no sense a volunteer. He purchased to protect himself, as second mortgagee, and at the request of the plaintiff. He is entitled to the full benefit of the deed of trust and that gives him at least eight and two-thirds per cent. Defendant contends for ten per

cent. But for the reasons before stated, this complaint is not presented by the record.

8. Numerous other objections are made to the report of the referee by the plaintiff, and especially as to the amount allowed for services rendered defendant as an attorney, and as to the amount with which the defendant is charged as revenues earned by the stallion "Magic," the joint property of these litigants. The referee heard the mass of evidence and stated the accounts with great care, and we are satisfied with his conclusions. As to the other matters of complaint, so far as we can see from the imperfect abstracts on this branch of the case, the referee's report, as modified and confirmed by the court, is without error, both as to the finding of the facts and the statement of the account.

9. Finally as to costs: These were, by the final decree, ordered to be taxed to plaintiff, except as otherwise adjudged during the progress of the cause. The statute provides: "In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." Other sections provide that costs shall be given at the discretion of the court, first, where the defendant shall plead several matters, and a verdict shall be for plaintiff on any issue; second, where there are several counts in the petition, and the verdict on any one shall be for the defendant. These statutes are the same now as in the Revised Statutes of 1845, save the present statute speaks of a "petition" and the former of a "declaration." R. S. 1845, p. 242, secs. 6, 8, 9; R. S. 1879, secs. 990, 992, 993. These provisions in the code of 1845 have reference to actions at law alone, for the eighteenth section provides: "Upon the complainant dismissing his bill in equity, or defendant dismissing the same for want of prosecution, the defendant shall recover against the complainant his costs; and in all other

cases in equity, it shall be in the discretion of the court to award costs or not, except in those cases in which a different provision is made by law." Under this statute it was the uniform ruling of this court, in equity suits, not to interfere in the taxation of costs by the trial court, unless there had been an abuse of the discretion. 7 Mo. 134; 19 Mo. 668; 24 Mo. 304. In the revision of 1855 this section is modified by substituting "plaintiff" for "complainant;" and "plaintiff dismisses his suit" for "complainant dismisses his bill in equity." The section still remains, as thus modified. R. S. 1879, sec. 1002. The chief purpose of the change in the phraseology of these sections was to conform them to the nomenclature of the new code, in which the party complaining is called plaintiff, and the first pleading a petition, both in actions at law and in equity.

As a general rule, where the plaintiff is the prevailing party in a suit in equity, he should recover costs. It was so held in *Hawkins v. Nowland*, 53 Mo. 328, but without any consideration of the history of these statutes. Where, however, substantial issues are found for one party and like issues found for the other, the taxation of costs will rest in the discretion of the court, and will not be disturbed unless there has been a clear abuse of that discretion. This discretion is vested in the court when the verdict is for one party on one count or defence and for the other party on another count or defence, and there is no reason why the principle should not be applied in equity suits, though there be but one count, there being distinct issues. Some support is given to this conclusion by what was said in *Dupont v. McLaran*, 61 Mo. 511. In this case, there were many distinct issues, that as to the right to redeem being found for the plaintiff, and those as to the amount of money to be paid for the defendant. We may, therefore, settle the question upon equitable principles.

The general rule is, that the plaintiff, and not the

defendant, must pay the costs in a suit to redeem from a mortgagee's possession, and this though he succeeds. There are exceptions to the rule, however, as where the mortgagee sets up an unwarranted or unconscientious defence, and thereby makes costs and delay. *Slee v. Manhattan Co.*, 1 Paige, 81 ; *Brockway v. Wells*, 1 Paige, 618 ; 2 Jones on Mort., sec. 1111. In the case last cited, it is said : "The defendant Brockway does not appear to have acted fraudulently or in bad faith in selling the contract. He only mistook his legal and equitable rights, and that forms no ground for charging a mortgagee with costs on a bill to redeem."

In the case of *Harper v. Ely*, 70 Ill. 582, a sale under a trust deed was held void on the ground that Haddock virtually purchased at his own sale, and for this reason the sale was deemed fraudulent. Ely purchased from him with notice. The bill was one to redeem, and it was held that the costs were properly adjudged against the complainant. In *Phillips v. Holsizer*, 20 N. J. Eq. 308, the question was, whether, under the circumstances, the transaction was a mortgage or a contract to reconvey. The defendant refused to accept the money when tendered, and resisted the suit on the ground that the transaction was not a mortgage, and failed in his defence ; yet he was allowed costs of the suit. The plaintiff made default in payment of the debt secured by the deed of trust, and has been in default for years as to the mortgage debts. He has shown no haste in paying these debts, and made no tender to defendant. Defendant purchased and went into possession at the urgent solicitation of plaintiff. He has been mistaken, but honestly mistaken, as to the character and legal effect of that purchase, and the repeated charges of fraud on his part are without any support in the reliable evidence in the case. The decree is practically a foreclosure in favor of defendant for over eighteen thousand dollars. Heavy as the costs must be, they are properly taxed to

plaintiff, certainly no abuse of the discretion of the trial court is shown.

The judgment is in all respects affirmed, except as hereafter stated. Each party will, of course, pay the costs of his appeal to and in this court. In view of these appeals the plaintiff will have six months from this date in which to make the deposit of money specified in the original decree. And to this extent the decree is modified. Ray, J., absent; the other judges concur.