## Louis J. B. Bourgeois v. Clarke Gapen et al.

Filed March 22, 1899. No. 8697.

1. **Review: Supplemental Petition: Harmless Error.** It is not prejudicial error to deny a plaintiff permission to file a supplemental petition if, in the subsequent course of the proceeding, he obtains the benefit of all matters therein pleaded.

2. **Recovery of Property Obtained by Fraud: Reimbursement.** The rule whereby one seeking to recover property obtained from him by fraud will not be required to reimburse the guilty party for moneys expended in pursuit of the fraudulent scheme, and to carry it into effect, will not be extended so as to relieve the party seeking to recover from discharging such burdens as would rightfully have devolved upon him if the transaction had been carried out in good faith.

3. **Mortgages: Bill to Redeem: Trusts: Reimbursement.** A made to B a deed absolute in form, with the agreement that it should stand as security for advances which B had made to protect the property against liens, and also for future advances. It was also agreed that B might sell or exchange the property and handle it as he saw fit in order to recover his money. B exchanged it for other property. There was evidence, supported by a finding in an interlocutory decree, that B had misrepresented the amount of money he had advanced and had secured a second deed by representing that he had effected an exchange for property which he could dispose of, and that subsequently he paid to A a small sum, saying it was the surplus proceeds after satisfying the debt. A, on learning what exchange had been made and that B still held title to the lot for which he had traded, brought a suit to declare a trust therein. *Held*, (1) That the suit was in effect a bill to redeem, and that A would be required, as a condition of reconveyance, to pay to B the amounts by B advanced, not only to discharge liens on the first property, but also all sums in good faith expended in repairs, in caring for it, and in efforts to sell and rent; (2) that as B had authority, uninduced by fraud, to exchange, A must also be charged with commissions and expenses incurred in making the exchange; (3) that he must also be charged with taxes paid on the property for which the exchange was made.

4. ———: ———: **Accounting: Reimbursement.** On a bill to redeem from a mortgage on vacant land which has no rental value, the mortgagor cannot, in the accounting, receive credit for either use and occupation, or for interest in lieu thereof.

5. ———: ———: ———: ———. In such a case the mortgagor will

not be credited on the accounting for a depreciation in value of the mortgaged property during a period when the mortgagee was resisting redemption and claiming absolute ownership.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.  *Affirmed*.

*Will H. Thompson*, for plaintiff in error.

*William D. Beckett* and *E. Wakeley*, *contra*.

IRVINE, C.

This action was, in form, a proceeding to declare a trust and compel a conveyance by the defendants to Bourgeois, the plaintiff. Under appropriate pleadings the plaintiff offered evidence tending to prove that he was, in 1889, the owner of a certain lot in the city of Chicago, on which was erected a house; that there was an incumbrance thereon in the form of a mortgage for about $5,000. It seems that there were also judgments against Bourgeois, or claims of some kind, which were also liens on the property. Bourgeois then lived in Omaha. He was distressed by the condition of the property and consulted Gapen, a friend or social acquaintance, with regard to placing the matter in the hands of some one in Chicago, that it might be properly handled. Gapen referred Bourgeois to one Swisher, a relative of Gapen, and a power of attorney was executed to Swisher whereby the latter was authorized to sell and convey, to execute deeds, and to do everything necessary to be done for the purpose of disposing of the property. Bourgeois then went on a visit to France. While he was absent, claims against the property were pressed, and in order to save it Gapen advanced certain moneys, under the agreement with Swisher that he was to be repaid with interest at ten per cent. To secure him Swisher executed to him a deed, in form absolute. Bourgeois ratified this contract. After Bourgeois returned Gapen represented to him that he could not carry the property longer; that he had ad-

vanced $1,500; that he could trade it for other property in Chicago which could be disposed of, and that he would pay to Burgeois any surplus that might so arise after satisfying his own claim.  Thereupon Bourgeois executed another deed to Gapen.  Some time afterwards Gapen paid him about $150, which he represented to be the surplus agreed to be paid.  It was later, however, discovered that Gapen had in fact exchanged the property for a lot in Omaha.  Then Bourgeois began this action to have Gapen declared a trustee for him as to that lot, and tendering such sum as might be found due on an accounting.  It was alleged that certain fraudulent conveyances had been made by Gapen to Wallace and by Wallace to Morris, and it was asked that these be vacated.  It seems that Gapen had borrowed money from Wallace and had conveyed the Omaha lot to him as security; that he had repaid the loan, and at his request the reconveyance was made to Morris.  The court vacated these deeds, and they need not again be referred to, unless perhaps as evidence directed to the issue of Gapen's good faith or lack thereof.  On the part of the defendants the evidence tended to show that after Bourgeois returned from France, Gapen proposed to him that he make a deed whereby that made by Swisher, which it is conceded was a mortgage, should be rendered absolute, and that the second deed was executed for that purpose. It was calculated that the amount of Gapen's advances, together with remaining liens, would be a little more than the highest offer which had been obtained for the Chicago property.  Gapen was, therefore, to take the property for his advances and assume the debts which were charges thereon.  It was thought that one lien might be defeated.  If so, Gapen was to pay the amount thereof to Bourgeois.  This lien was defeated, and Gapen paid the money to Bourgeois.  This is the payment which Bourgeois claimed represented the surplus. Gapen is in this respect corroborated by strong documentary evidence.  Gapen claims that he thus became

the absolute owner of the Chicago property and had a right to do with it and its proceeds as he saw fit. The court found for the plaintiff, and ordered an accounting of Gapen's expenditures on the Chicago property. On the accounting all the evidence leading to the interlocutory decree was reintroduced, together with further evidence on the direct issues presented. The court, by its final decree, awarded to Gapen, not only what he had expended on the Chicago property, but also a broker's commission and other expenses of effecting the exchange, and taxes paid on the Omaha property. This it required Bourgeois to pay as a condition of redemption. Bourgeois seeks a reversal.

Bourgeois assigns as error certain orders whereby he was denied the right to interpose a supplemental petition after the interlocutory decree. These rulings were without prejudice, if the supplemental petition tendered no facts warranting relief other than was finally obtained. One thing pleaded was certain acts of Gapen which, it is claimed, operated as an acceptance of the terms of the interlocutory decree. As Gapen now accepts that decree with its consequences, Bourgeois has obtained all the benefit which could have resulted from the supplemental petition in that regard. The remaining averments relate to depreciation in the value of the property. This subject can be best treated at another stage of the opinion.

Bourgeois claims that his proof, sustained by the general finding for the plaintiff in the interlocutory decree, shows that Gapen was guilty of actual fraud, and that, under the rule in *Goble v. O'Connor*, 43 Neb. 49, plaintiff should, therefore, not be compelled to pay anything as a condition for relief, at least nothing advanced after the conveyance was made of the Chicago property. The doctrine of *Goble v. O'Connor* is that where one in the pursuit of a willful scheme to defraud expends money in procuring the plaintiff's property, he has no standing in equity to require indemnity from the party defrauded as a con-

dition of granting the latter relief.  Is that case here in point?  In the first place, an interlocutory decree is not *res judicata*, and the court on the final hearing may set it aside.  If the findings in the final decree are inconsistent with those in the interlocutory, the former prevail.  (*Ellis v. Harris*, 56 Neb. 398.)  If the accounting, when taken with the findings in the interlocutory decree, proceeded on a basis inconsistent with *Goble v. O'Connor*, then perhaps we would be obliged to disregard the earlier findings and follow those of the final decree.  But that is unnecessary here.  It is conceded that the transaction began in good faith; that Gapen did advance some money on the Chicago property; that he took the conveyance by Swisher as security therefor.  It follows that Gapen had a valid mortgage.  Bourgeois admits that after he returned from France it was agreed between him and Gapen that the latter should proceed to handle the Chicago property, to pay charges against it, to repair, to rent if practicable, to sell or exchange it, to do anything in fact which he might see fit, and to hold the title as security for all expenses thereby incurred.  Gapen then had the right to exchange it for the Omaha property or for anything else.  If he had made full disclosures to Bourgeois, he might still have done as he actually did, and Bourgeois' right would be merely an equity of redemption in the Omaha property, charged with all such expenses.  The fraud, if there was any, consisted in only two things: representing the amount advanced as greater than it really was at the time, but less than it would be when Gapen should have performed his agreement, and less than it in fact soon became; secondly, in concealing the fact of the exchange for the Omaha property.  According to both sides, all parties thought the transaction closed with the conveyance of the Chicago property.  Gapen thought his title had become absolute.  Bourgeois thought it had been traded for other Chicago property, that the latter had been sold, and that, after paying his debt, he had received a mere pittance to represent

his equity. The utmost effect of the fraud, if successful, would have been to treat as absolute the Omaha title, which was in law a mortgage. When it is decreed a mortgage, Bourgeois gains all that would have been his if perfect good faith had been exercised. The principle which denies compensation to one who in the perpetration of an active fraud, and as a means of perpetrating it, expends money, does not extend to the forfeiture of all claims, even those arising independent of the fraud, and which would be debts enforceable if the fraud had not existed. This consideration disposes of the allowances made for expenditures on the Chicago property, and sustains the findings as to those items. Some attack is made on certain of these items as unnecessary expenditures. Gapen's plenary power to manage that property entitles him to all expenses thereby incurred in good faith. So far as we can see, the items allowed were reasonable expenditures for handling the property. No question can be made so far as the items represent liens discharged; that was the primary purpose of the arrangement. Repairs on the house in order to render it habitable, expenses of taking persons to see it with a view to buying, the expense of a watchman,—these constitute nearly all the rest of the charges, and, under the evidence, we think they were not only incurred in good faith, but were almost demanded. As, according to Bourgeois' own theory of the contract, Gapen was to exchange the property if he saw fit, we must also hold that the broker's commission and other expenses of the exchange were properly allowed. The taxes on the Omaha property were certainly a proper charge. If the exchange had not been made, Gapen might for his own protection have paid the taxes in Chicago and added them to the debt. Under his contract he was really bound to do so. Therefore, when the plaintiff follows his equity into the Omaha property, it must be charged with similar burdens, especially as it does not appear that the burden was increased by the exchange.

28

Plaintiff complains that he was allowed nothing for rents, and was denied a credit for depreciation in value of the Omaha property before his interest was discovered and while Gapen has been resisting redemption. The Omaha property is a vacant lot, agreed to be without rental value during the period in question. All efforts to rent the Chicago property had also been unavailing. Gapen's possession has been constructive at best. Under such circumstances rents are never allowed, for the very good reason that there are none and can be none to allow. But it is argued that, in the absence of rent, compensation should be given in the form of interest. In the circumstances of this property this cannot be permitted. (*Peugh v. Davis*, 113 U. S. 542.)

The contention that plaintiff should be allowed a credit to the extent of depreciation in value is, we think, not tenable. *Violet v. Rose*, 39 Neb. 661, is invoked on this point. That was a case where a vendor of land refused to make the conveyance when he should have made it, but finally did convey, and it was held that the vendee's measure of damages was the difference in value at the time the conveyance should have been made and when it was made. This rule was induced from that applied in analogous cases of sales. The principle involved seems to have a bearing on a case where a mortgagee vexatiously refuses to accept a redemption; but in the one case the anticipated value is an essential part of the bargain, in the other there is no contract of that character. Mortgagors and mortgagees contract with reference to the value at the time the mortgage is made, and both take their chances of fluctuations. The unearned increment, and a loss occurring, not by reason of waste, but because of a general and uncontrollable depreciation of values, are alike matters which the courts can never hope to adjust with perfect equity, and which they never have undertaken to adjust in accountings between mortgagor and mortgagee. *Peugh v. Davis, supra*, is a case in its general features strikingly like that at bar, as may be

seen by reference to the opinion therein on a former appeal.   (96 U. S. 332.)   It was there insisted, as here, that the mortgagor was entitled to a credit on account of depreciation during the period when the mortgagee was insisting that his title was absolute.  · It was held that such a credit could not be allowed in an accounting on the mortgage for the purpose of redemption.   Indeed, generally speaking, the.only penalty which the courts have visited upon a mortgagee who even vexatiously resists redemption is the taxation of costs against him.   (*Snagg v. Frizell*, 3 Jo. & La. [Ir.] 383; *Slee v. Manhattan Co.*, 1 Paige [N. Y.] 48; *Still v. Buzzell*, 60 Vt. 478; *Turner v. Johnson*, 95 Mo. 431.)

While we have not taken up the assignments of error in their order, or even discussed them separately, we believe the conclusions expressed cover the whole of the argument.

AFFIRMED.