ASHER GUCKENHEIMER et al., Respondents, *v.* JACKSON ANGEVINE, Impleaded, etc., Appellant.

A vendor, seeking to rescind a contract of sale and to recover the property on the ground of fraud, is not required to reimburse the fraudulent vendee for advances to others or for expenditures made by the latter to effectuate the fraud; and this although the vendor would have the benefit of the advances or expenditures on repossessing himself of the property.

The doctrine of equitable subrogation will not be applied in such case to relieve the vendee from a loss occasioned by his own unlawful act.

Plaintiffs sold to J. & J. P. S , defendant's assignors, a quantity of whisky then in a U. S. bonded warehouse and subject to a government tax ; the sale was induced by fraud on the part of the vendees. Defendant A. who was privy to the original fraud, paid the tax in order to get possession of the whisky. *Held,* that plaintiffs, in seeking to rescind the sale and to reclaim the property, were not bound to reimburse to A. the tax so paid.

(Submitted June 2, 1880; decided June 15, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiffs entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover possession of fifty barrels of whisky.

The whisky in question was sold by plaintiffs to J. & J. P. Schell on credit, the sale being, as plaintiffs alleged and as the evidence showed, induced by fraud.

The whisky was then " in bond " in a United States bonded warehouse subject to a government tax. Defendant Angevine, who claimed as purchaser from the Schells and who was privy to the fraud practiced upon the plaintiffs, paid the tax in order to get possession of the whisky.

The counsel for Angevine moved for a nonsuit on the ground that the payment by him of the government tax entitled him to hold the whisky and gave him a lien upon it to the extent of the sum paid, of which he could only be divested by a tender of that sum before commencement of the action. The motion was denied and said counsel duly excepted.

Further facts appear in the opinion.

*George W. Cothran* for appellant. Plaintiffs having received the defendants' $1,500 in the enhanced value of the whisky, could not rescind the sale and reclaim the property without restoring what they had received. (*Cobb* v. *Hatfield*, 46 N. Y. 533; *Curtiss* v. *Howell*, 39 id. 215; 2 Pars. on Cont. [5th ed.] 780; *Downer* v. *Smith*, 32 Vt. 8; *Cook* v. *Gilman*, 34 N. H. 560; *Cable* v. *Ellis*, 86 Ill. 525; *Cushing* v. *Wyman*, 38 Mo. 589; *Emerson* v. *McNamara*, 41 Me. 567; *Baker* v. *Bobbins*, 2 Denio, 136; *Ford* v. *Harrington*, 16 N. Y. 287; *Ely* v. *Mumford*, 47 Barb. 632; *Steves* v. *Hyde*, 32 id. 171; Kerr on Fraud, 327.)

*Delavan F. Clark* for respondents. On discovering the fraud, the plaintiffs were entitled to rescind their contract of sale and recover their whisky from the defendant Angevine. (*Nichols* v. *Michael et al.*, 23 N. Y. 264.) As the plaintiffs received nothing upon the contract of sale, they had nothing to return to entitle them to recover their property. (*Hammond* v. *Pennock*, 61 N. Y. 153.) The law gives no protection to a purchaser *mala fide*, even though he pays the full value of the goods purchased. (*Fullerton* v. *Viall & Grant*,

42 How. Pr. 294; Bump on Fraudulent Conveyances, 198; *Beals* v. *Guernsey*, 8 Johns. 446.) The payment of the government tax by Angevine does not entitle him to be substituted to the rights of the government. (*Silsbury* v. *McCoon*, 3 Comst. 379; *Pearse* v. *Pettis*, 47 Barb. 276; BEARDSLEY, J., *Masson* v. *Bovet*, 1 Denio, 74; *Hammond* v. *Pennock*, 61 N. Y. 153.) Conceding that the Schells would, in an action against them, have the right to interpose, as a defense, that he had paid the tax on the whisky, defendant is not in a position to avail himself of it. He is a wrong-doer, and must stand on his own merits. (2 Pars. on Cont. [6th ed.] 680; *Pearse* v. *Pettis*, 47 Barb. 276; *Jeffries* v. *G. W. R. R.*, 5 Ellis & B. 802.)

ANDREWS, J. The rule that a party undertaking to rescind a contract for fraud must restore to the other party what he has received under it is firmly established by authority. (*Curtiss* v. *Howell*, 39 N. Y. 215; *Cobb* v. *Hatfield*, 46 id. 533, and cases cited.) The person defrauded cannot at the same time avoid the contract and retain any thing received by virtue of it, of value either to himself or to the party who committed the fraud.

It is claimed that within this rule the plaintiffs were bound to reimburse to the defendant Angevine the government tax paid by the latter, before they could reclaim the whisky, on the ground that the tax was a lien on the whisky when the plaintiffs sold it, and that the money paid by the defendant to discharge the lien must be regarded upon the plaintiffs' election to rescind the contract as money paid to their use. It is doubtless true that the plaintiffs on retaking the whisky would have the benefit of the payment of the tax, and it is claimed that its reimbursement is a necessary element in the rescission of the contract of sale. Without considering what the rule would be, in the case of the sale of a chattel, subject to a lien, voidable by the vendor for fraud, where the purchaser, after having acquired possession, pays the lien to protect his title, it is, we think, a complete answer to the claim made in this case, that the jury has found,

upon sufficient evidence to justify the finding, that the defendant Angevine was privy to the original fraud practiced upon the plaintiffs, and paid the tax in order to get possession of the whisky, and to enable him thereby to consummate the fraudulent scheme for depriving the plaintiffs of their property. The plaintiffs did not lose their title by the sale. The tax was not paid by the defendant at their request. They received nothing from the defendant. The law will not, under these circumstances, imply a promise on the part of the plaintiffs, on rescinding the contract, to reimburse the defendant for advances or expenditures made by the latter to effectuate his fraud, although the plaintiffs would have the benefit of such advances and expenditures on repossessing themselves of the whisky. Nor will the doctrine of equitable subrogation be applied to relieve the defendant from a loss occasioned by his own unlawful act. The case is analogous to that of a willful trespasser, who has wrongfully converted a chattel, and afterward enhances its value by labor bestowed upon it. The wrong-doer in such a case is bound to account to the true owner for the value of the chattel in its changed or improved condition, and his recovery will not be limited to its value in the condition in which it was at the time of the conversion. (*Silsbury* v. *McCoon*, 3 N. Y. 379.) The law cares very little what a fraudulent party's loss may be, and exacts nothing for his sake. (BEARDSLEY, J., *Mason* v. *Bovet*, 1 Den. 74.) It certainly will not undertake to indemnify him for expenditures made in the prosecution of his fraudulent purpose.

So far as this case is concerned, the defendant has no reason to complain. It appeared on the trial that the defendant had sold the whisky, and put it beyond the power of the plaintiffs to retake it on the execution. The judge limited the jury in the assessment of the damages to the sum for which the plaintiff sold the whisky, with interest thereon. The payment of this sum will satisfy the judgment.

The judgment should be affirmed.

All concur.

Judgment affirmed.