ALLEN GOBLE ET AL., APPELLEES, V. JOHN J. O'CON-
NOR ET AL., APPELLANTS.

FILED DECEMBER 5, 1894. No. 5730.

Judicial Sales: FRAUD TO PREVENT BIDDING: TITLE OF PUR-
CHASER. A bidder at a judicial sale of real estate induced an-
other bidder thereat to cease bidding, by the promise to pay him
a sum of money for so doing, and by this means procured the real
estate to be sold to him for a less sum than would otherwise have
been realized from its sale. *Held*, That the sale was fraudulent
and invalid and the purchaser obtained no title thereby or by
the deed executed and delivered to him in pursuance thereof as
against parties whose interests were defrauded; and the property
may be recovered in an action for such purpose, by the parties
entitled thereto, and they will not be required to repay to him
such portions of the purchase price paid by him as were ex-
pended to discharge mortgage or other liens and incumbrances
from the property existing thereon at the time of the sale, in-
cluding the lien under which such sale was made, or other mon-
eys expended by him on the property or its title.

APPEAL from the district court of Douglas county.
Heard below before HOPEWELL, J.

*John D. Howe*, for appellants, cited: *Pearsoll v. Chapin*,
44 Pa. St., 13; *Seylar v. Carson*, 69 Pa. St., 81; *Dillon
v. Merriam*, 22 Neb., 151; *Loney v. Courtnay*, 24 Neb.,
583; *Wardell v. Union P. R. Co.*, 103 U. S., 651; *Pettit
v. Black*, 8 Neb., 52; *Grant v. Lloyd*, 12 Sm. & M. [Miss.],
191; *Des Moines & M. R. Co. v. Alley*, 3 McCrary [U. S.
C. C.], 589; *Reed v. Exum*, 84 N. Car., 430; *Flash v.
Wilkerson*, 20 Fed. Rep., 257; *Clements v. Moore*, 6 Wall.
[U. S.], 299; *Boyer v. Barr*, 8 Neb., 68; *Fay v. Parker*,
53 N. H., 342; *Albrecht v. Walker*, 73 Ill., 69; *Roose v.
Perkins*, 9 Neb., 304; *Riewe v. McCormick*, 11 Neb., 261;
*Boldt v. Budwig*, 19 Neb., 739; *Homan v. Laboo*, 2 Neb.,

8

291; *Aultman v. Steinan,* 8 Neb., 109; *Swift v. Dewey,* 20 Neb., 107; *Buchanan v. Griggs,* 20 Neb., 165.

*John P. Breen* and *E. W. Simeral, contra.*

HARRISON, J.

July 23, 1890, appellees filed a petition in the district court of Douglas county, in which it was stated in substance that they are the minor children and heirs and all the heirs of Charlotte A. Goble, deceased, and John Williams is their duly appointed and qualified guardian; that Charlotte A. Goble was, during her lifetime, the owner of lot 2, in block 80, in the city of Omaha, and with her husband, Milton H. Goble, executed and delivered to one Eliza Hughes a mortgage on said premises to secure the payment of six promissory notes, amounting to the aggregate sum of $6,000; that this mortgage was on the 1st day of July, 1884, sold and assigned by Eliza Hughes to one Joseph M. Rees, who died July 25, 1885, J. J. O'Connor being appointed executor of his will and estate; that as such executor J. J. O'Connor foreclosed the mortgage for a balance of $4,000 and interest due thereon, and a decree was entered in the foreclosure suit foreclosing the mortgage and ordering a sale of the premises to pay the sum adjudged due thereon, $4,960 and accrued interest and costs, and the further sum of about $657.35, taxes due one of the defendants in the foreclosure suit; that a stay of sale was taken for the statutory period, and on June 3, 1890, pursuant to order of sale issued and the regular proceedings thereunder, the sheriff of Douglas county offered the property for sale and sold the same to John J. O'Connor for the sum of $6,506, he being the highest bidder; but in this connection it is alleged that John J. O'Connor, "improperly and in fraud of their rights, before and at the time of said sale, and during the time that said sheriff was crying out the bids on said property, did,

by means of promises of favor and reward, prevent and
dissuade other persons from bidding at said sale, and
did then and there promise one McFarland, of the law
firm of Saunders & McFarland, of the city of Omaha,
who was present and who was a bidder at said sale, a large
sum of money if he, McFarland, would desist and cease
bidding, and that said McFarland, because of and owing
to said promise and agreement, did actually cease bidding
at such sale; that said O'Connor, by means of promises of
favor and reward, did prevent one Saunders, of the law
firm of Saunders & McFarland, from bidding at said
sale, by means of all of which said O'Connor obtained
said premises at an undervalue of his said bid, and at a
price far below the actual value of said premises, and
much below the sum which would have been realized at
said sale, but for the improper conduct of said O'Con-
nor, aforesaid, and the collusion between the said bid-
ders at such sale." That the sale was confirmed and
a deed was made by the sheriff for the property and
delivered to John J. O'Connor, which he caused to be
recorded, and claims the property and threatens to dis-
possess the plaintiffs (appellees) and also threatens to sell
and dispose of the premises to some innocent purchaser;
that appellees did not discover or have knowledge of the
improper conduct and collusion at the sale until after its
confirmation by the court; that they are entitled to all the
proceeds of the sale of said property in excess of the amount
of the liens thereon and to have a fair and just sale made.
The petition asks relief as follows: "Therefore ask that
said sale, and the said deed made in pursuance thereof, may
be set aside by order of this court, and that the defendant
John J. O'Connor account for the rents and profits from this
property since he has occupied it, and inasmuch as said
O'Connor is threatening to dispossess these plaintiffs from
said premises and is threatening to dispose of said premises,
and inasmuch as plaintiffs have no adequate remedy at law

to prevent these threatened violations of their rights in the premises, it is asked that this court grant a restraining order, enjoining said O'Connor from disposing of or incumbering said premises, and from dispossessing these plaintiffs from said premises, or moving into or upon said premises himself, until this case can be heard and fully determined, and for such other and further relief as equity can give." A restraining order was issued and on application a temporary injunction was granted. John J. O'Connor filed an answer to the petition, in which he stated that Milton Goble purchased from Eliza Hughes the premises described in the petition, taking the title in the name of Charlotte A. Goble, and executed the notes and mortgage for $6,000, and that the same was for a part of the purchase price of the property; that the notes and mortgage were assigned to Rees; that Rees died as alleged in the petition and O'Connor was the executor of his will and foreclosed the mortgage and at the sale bought the premises for $6,505; that at the time of such sale the property had been sold for taxes, and the liens for taxes amounted to $647, and that the building on the lot was at the time of the sale dilapidated and out of repair and the fence and other parts of the property had been destroyed and that it sold for its full value; also denied that O'Connor offered Saunders & McFarland large sums of money to prevent them from bidding at the sale, and further stated: "That after defendant purchased said lot he paid to redeem same lot from tax sale the sum of $103 on June 12, 1890, and also paid county tax on same day $50.35, and on June 30 of said year paid city taxes on said lot of $99.60, all of which sums were valid and paramount liens on said property; that for the repairs and·betterment of the property defendant expended for painting and glass, $59.15; repairing steam heater as follows: boiler work, $80.65; brick work, $15; lime and sand, $2; repairing roof, water pipe, and chimney, $12; mason for repairs, plaster, and chimney,

$3.50; repairs plumbing and steam heating, new reservoir, $67.35; repairing and sodding embankment, $11.70; all of said repairs being necessary to protect said property from going to decay and ruin; that the amount of the defendant J. B. Dickey's claim, to-wit, $805.43, has been paid out of the sum of $6,505, paid by defendant at said sheriff's sale, and the amount due on the decree of the estate of Joseph M. Rees has been paid to the heirs and the costs prior to the commencement of this suit; also a portion of the surplus has been paid to said minors, plaintiffs; that said defendant has been ready at all times and is now willing to accept the amount so paid for said real estate, with his improvements and interest, and allow said plaintiffs to redeem the said property and has offered to plaintiffs to accept said money and allow him to redeem said property; but that neither said plaintiffs, nor any one for them, has tendered any sum whatever to defendant to reimburse him any of the amounts by him paid out on account of said sale and of said property as aforesaid. Defendant denies that plaintiffs are entitled to any relief, but said defendant is willing that said sale and deed may be set aside and that the property be resold on condition that out of the proceeds he shall be paid the amount so paid at said sale and for improvements and taxes with interest; and defendant, further answering said petition, denies each and every allegation in the said petition contained. Defendant further avers that Milton H. Goble, the father of said children, plaintiffs, who are under the age of twenty-one years, is a necessary party to this suit, he being a tenant by the curtesy subject to said sale and deed. Wherefore defendant prays that said Goble, the father of said children, may be made a party defendant to this suit, and that if said sale and deed be set aside, it shall only be on condition that the defendant be reimbursed for the moneys he, defendant, paid out at said sale and in discharging incumbrances upon said property and for necessary repairs and improve-

ments of the property in question, and for such other and
further relief as may be just and proper." To this answer
the following reply was filed: "Replying to the answer of
the defendant John J. O'Connor, filed herein, the plaintiffs
admit that the claim of J. B. Dickey on the premises has
been paid out of the money realized at the sheriff's sale of
the property, and they admit that the claim of the Joseph
M. Rees estate under the mortgage foreclosed has been
paid to said estate and that the costs of the foreclosure case
have likewise been paid out of the money realized at the
sheriff's sale, and these claims canceled of record, but they
deny that they have received any of the surplus remaining
after paying off the claims aforesaid, out of the amount
realized at the foreclosure sale, and deny that they ever
authorized anybody to receipt for said surplus or any por-
tion thereof for them, or either of them. Still further re-
plying they deny each and every allegation of new matter
of defense contained in said answer, and deny each and
every allegation of said answer inconsistent with and
contradictory of their petition filed herein, except the alle-
gations of the answer hereinbefore admitted." On motion
of appellees the case was dismissed as to J. B. Dickey. A
trial of the case to the court resulted in findings and a de-
cree in favor of the appellees. The first portion of the
findings is as follows:

"On this 9th day of April, 1892, this case coming on
for final determination and judgment, upon the proof,
pleadings, and arguments of counsel heretofore heard,
taken, and submitted herein, and the court having consid-
ered and being now fully advised in the premises, finds
that the minor plaintiffs, Allen and Gertrude Goble, were,
on and prior to the 3d day of June, 1890, the owners of
the property described in their petition filed herein, to-wit,
lot two (2), in block eighty (80), in the city of Omaha,
Douglas county, Nebraska, subject, however, to the pur-
chase money mortgage made to Eliza Hughes, assigned to

Joseph M. Rees, and held by the defendant O'Connor as executor of his estate, and to the tax lien of James B. Dickey, described in their petition; that on said day, by due process of law, said premises were offered at sheriff's sale by the sheriff of said county to satisfy said mortgage and tax lien; that the defendant John J. O'Connor was a bidder for said property at said sheriff's sale on his own behalf, and that at said sale, and while the same was in process, the said O'Connor, in order to stifle and stop competitive bidding against him, did corruptly and fraudulently promise and offer to one John M. McFarland, who was present, and who was, likewise, a bidder for said property at said sale, the sum of two hundred dollars ($200), which offer was accepted by the said McFarland, and that in consequence of said promise and offer the said McFarland ceased to bid at said sheriff's sale, and in consequence thereof the said O'Connor fraudulently procured the said property to be struck off to him at an undervalue, and the court finds that in pursuance of such promise and offer the said O'Connor did shortly thereafter pay to said McFarland the sum of $200, and now this court, declares, as a conclusion of law, that by reason of these fraudulent acts of the defendant O'Connor this sheriff's sale was and is fraudulent and void.    To which finding of facts and conclusion of law the defendant O'Connor excepts."

This is followed by findings that O'Connor paid into court June 10, 1890, the amount of his bid and received the sheriff's deed, that by reason of the fraud perpetrated at the aforesaid sale upon which it was issued it was void and conveys no title to said O'Connor to said premises. There is also a finding that at and prior to the time the sheriff's deed was executed, the appellees were in possession of the property, and that shortly afterwards O'Connor illegally dispossessed and ousted them therefrom, and has since held the possession; and further, that the mortgage and tax liens have been paid and discharged with the

money paid into court on the O'Connor bid, $805.43 of it
being applied to the payment of Dickey's tax lien, and that
O'Connor, after he received the sheriff's deed, paid $103
to redeem the lot from tax sale for taxes levied thereon
prior to 1890, and $149.85, city and county taxes for the
year 1889, and the further sum of $303.47 for repairs and
improvements on the property.   The court further finds as
a matter of law:

"The court further finds as a matter of law, and because
of the aforesaid fraudulent acts of the defendant O'Connor
at said sale, that he, the said defendant O'Connor, is not en-
titled in this action to be reimbursed any of the moneys he
has as aforesaid expended in satisfying said decree, or in
payment of taxes, or otherwise, and that he is not herein
entitled to have a lien on said property therefor, or any
part thereof, and that the plaintiffs are not required in this
action, as a condition precedent to the relief herein de-
manded, to in any manner refund to him any of said sums,
to which conclusion of law defendant excepts."

Here follows a finding that Charlotte A. Goble was at
the time of her death, in 1885, the owner of the lot; that
her husband, Milton H. Goble, still survives and is the
owner of an estate by curtesy in the property, and that ap-
pellees are, therefore, not in law entitled to the rents and
profits of the premises or to recover them from O'Connor
for the time he has occupied the property, and the part of
the prayer of the petition in which such recovery is asked
is denied, and it is further declared that Milton H. Goble
was not a necessary party to this suit.   The decree sets
aside the sheriff's deed and annuls the title acquired by
O'Connor thereunder and orders that the recording of the
decree in the office of the register of deeds shall operate
as a cancellation of record of the sheriff's deed; that within
twenty days of the rendition of the decree, O'Connor shall
deliver possession of the premises to appellees, and if not
done a writ of restitution to issue, and further orders taxa-
tion of costs against O'Connor.

O'Connor excepted to the findings of fact, conclusions of law, orders, and decree, and asked that supersedeas bond be fixed, which was done. The bond was given and an appeal of the case to this court in behalf of O'Connor perfected. There is not much conflict in the evidence as to what took place at the sale, and we think the court's findings as to its being made at less than the value of the property or what could have been obtained for it if there had been no attempt by fraudulent practices on the part of O'Connor to stop competition, are sustained by the testimony. Hence the findings by the court that fraud was practiced by the purchaser, O'Connor, and its result was the sale of the property to him at less than would have been obtained for it if no unfair means had been employed to stifle competition, will not be disturbed; and this brings us to the main question which arises in the case for our adjustment.

The counsel for appellant strenuously insist that the appellees, before they should be granted any relief, should be required to do equity under the rule that he who seeks equity must do equity. If the court concludes that the appellees are entitled to relief, he states in concluding his brief that it should be as follows:

"The equitable condition should be imposed that the plaintiffs asking relief refund the amount of the purchase price of the lot and tax liens paid by O'Connor's bid, and for the betterments less the rental value while occupied by O'Connor, and to this end M. H. Goble, the father and owner of the estate by the curtesy, should have been brought in in order that complete equity might be done.

"2. Or secondly, the property should be resold and the purchase price of the lot, etc., be paid from the proceeds to O'Connor.

"3. Or in setting aside the sale, the satisfaction of the decree, etc., should be set aside and O'Connor be held subrogated to the liens he paid off, etc., and in accounting for rents he should be credited with money paid for betterments.

"4. Or O'Connor should be required to pay such additional sum as might possibly have been realized from the sale had McFarland bid what was equal to $7,500 for the lot clear, which he swore he might have possibly been led by excitement to bid; which would be a matter of less than $400 more than was realized.

"5. O'Connor should be charged with all costs that have been made necessary by the failure of the sale."

It being established that appellant, at the time of the sale of the premises by the sheriff under the order of the court, by his promise to pay the other bidder the sum of $200 if he would cease bidding, induced such party to offer no further bids and obtained the property at a less sum than would have been offered and paid for it if such influence had not been brought to bear by appellant, makes a clear case of fraudulent practice on his part during such sale and of such fraud as against and detrimental to the rights of appellees herein as rendered the sale invalid, and no title vested in him by such sale, or the conveyance made in pursuance thereof, which can be asserted or will be upheld as against the appellees. That such a sale and purchase is fraudulent and void is so well settled by the authorities that we deem no citation of them necessary.

The only remaining question is, will a court of equity order that appellants be repaid the purchase money which extinguished incumbrances upon the premises, existing prior to and at the time of the sale, and other expenditures made by him upon the property and its title? Is he entitled to any relief, or must it be denied him? He has invoked against the appellees the rule of equity that "he who seeks equity must do equity." We do not think he is in a position in this case to claim the benefit of the above rule. A maxim which we think more applicable to his position, as indicated by the facts and circumstances adduced at the trial of the case, is "he that hath committed iniquity shall not have equity" (Francis, Maxims, 8); and another, that

"he who comes into a court of equity must come with clean hands." These have a direct application to the facts of the present case. The appellant, by his own fraudulent acts, has placed himself in such a position that the court can afford him no relief. All these payments were made in pursuance of, and as a part and in completion of, the sale which was made to him, and which was fraudulent as to the rights of appellees because of his wrongful acts and practices at and during such sale, and his right to be reimbursed all payments and expenditures must arise out of the sale which was tainted with his fraud and wrong, and void in consequence thereof, and his claim derived from such a source cannot be recognized in any court. To require the appellees to repay what has been paid out by appellant in this case would not be enforcing the rule that "he who seeks equity must do equity." "The rule has no application to cases of actual fraud. It would be against good policy that it should; for it would act as an encouragement to unfair dealing. A man might gain, but he could not lose by his frauds. If he succeeded, he would reap the fruits of his knavery; but if detected, he would be entitled to a return of his money, and moreover to be reimbursed to the value of his improvements." (*Gilbert v. Hoffman*, 26 Am. Dec. [Pa.], 103.) The sale to appellant was void because of his wrongful and fraudulent acts at the time of the sale, and he acquired no title as against appellees, and is not entitled to have the money paid out by him refunded; and this last, not by way of punishment, and not that the court would help or desire to aid appellees beyond the demands of justice and equity, but because, by his own wrong, the appellant has placed himself in such a position that the court is unable to grant him relief. (*McCaskey v. Graff*, 23 Pa. St., 321, 62 Am. Dec., 336; *Gilbert v. Hoffman, supra; Sands v. Codwise*, 4 Johns. [N. Y.], 597, 4 Am. Dec., 305; *Elam v. Donald*, 58 Tex., 316; *Hayes Estate, Allegheny Nat. Bank's Appeal*, 159 Pa. St., 381; Sheldon, Subroga-

tion, sec. 44; *Devine v. Harkness*, 117 Ill., 145; *Gucken-heimer v. Angevine*, 81 N. Y., 394; *Milwaukee & M. R. R. R. Co. v. Soutter*, 13 Wall. [U. S.], 517; *Martin v. Hodge*, 1 S. W. Rep. [Ark.], 694; *Johnson v. Moore*, 33 Kan., 90; *German Bank of Memphis v. United States*, 13 Sup. Ct. Rep., 702; *Wilkinson v. Babbitt*, 4 Dill. [U. S.], 207; *Perkins v. Hall*, 12 N. E. Rep. [N. Y.], 48; *Acer v. Hotchkiss*, 97 N. Y., 395.)

The case of *Connecticut River Savings Bank v. Barrett*, 33 Neb., 709, cited by attorney for appellant is not one which can be called in point in this case. In that case NORVAL, J., in stating his conclusion from an examination of the facts proved, says: "The state of the proof justified the trial court in finding that Philpot was not the absolute owner of the school land, but that he held the title in trust for Barrett, subject to his lien thereon for the amount paid the state to obtain the title. The appellant having paid the balance of purchase money to the state, he was entitled to a lien for that amount with interest, which the decree gives him." Clearly no such condition of facts exists in the case at bar, nor, we think, did that call for the application of any of the rules and principles applicable in the present case. In that case there was no actual fraud on the part of Philpot, nor was he expecting to make anything out of the deal. In the case at bar there was active and actual fraud and wrong by the appellant and with the motive and purpose of gain and advantage to himself. The decree of the district court is

AFFIRMED.